IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01007-STV

RUTH A. WAGNER,

    Plaintiff,

v.

CHER, LLC,
ELIZABETH EBERLE, and
ASHLEY STITCH,

    Defendants.
_____

# ORDER
_____

Magistrate Judge Scott T. Varholak

    This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff's Civil Conspiracy Claim (the "Motion"), which seeks dismissal of Plaintiff's civil conspiracy claim against Defendants Elizabeth Eberle and Ashley Stitch pursuant to Federal Rule of Civil Procedure 12(b)(6). [#11] The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [#7, 8] The Court has considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the instant Motion. For the following reasons, the Court **GRANTS** the Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiff's civil conspiracy claim.

**I.      Background**[1]

Plaintiff Ruth Wagner began her employment with Defendant CHER, LLC ("CHER"), a manager-managed limited liability company that provides medical imaging services, in 2015 when CHER acquired the facility where Plaintiff worked, located at 1819 Denver West Dr., Bldg. 26, Suite. 100, Lakewood, Colorado (the "Denver West Facility").[2] [#1 at ¶¶ 2, 10]  In August 2016, CHER created the trade name Health Imaging at Denver West ("Denver West").  [*Id.* at ¶ 10]  For years prior to CHER's acquisition of the Denver West Facility, Plaintiff had served in a "virtually-identical position" to that which she held with CHER after its acquisition of the facility.  [*Id.* at ¶ 17]

In or about June 2017, CHER hired Defendant Elizabeth Eberle, who was in her mid-thirties at the time, as the new "Center Manager" for Denver West.  [*Id.* at ¶ 14]  According to Plaintiff, soon after Ms. Eberle was hired, she began exhibiting hostility towards Plaintiff.  [*Id.* at ¶ 15]  Ms. Eberle nit-picked Plaintiff's work and upbraided her in front of other CHER employees and patients.  [*Id.* at ¶ 16]  Plaintiff trained Defendant Ashley Stitch, who was in her twenties, when Ms. Stitch started at Denver West.  [*Id.* at ¶ 18]  During her time training at Denver West, Ms. Stitch developed a close relationship with Ms. Eberle.  [*Id.* at ¶ 19]  Ms. Eberle and Ms. Stich bonded over being "gym rats," started training together, and socialized otherwise outside of work.  [*Id.* at ¶¶ 19, 36]  Ms. Eberle and Ms. Stitch spent a lot of time together and discussed their workouts at work.

---

[1] The facts are drawn from the allegations in Plaintiff's Complaint [#1], which must be taken as true when considering a motion to dismiss.  *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).
[2] Plaintiff began working at the Denver West Facility in 2003.  [#1 at ¶ 11]  Her original employer at the Denver West Facility subsequently sold the facility to a second entity, which hired her upon their acquisition of the facility.  [*Id.*]  That second employer then sold the facility to CHER.  [*Id.*]

[*Id.* at ¶ 19] Ms. Eberle and Ms. Stitch teased Plaintiff about being "old" and "out of shape." [*Id.* at ¶ 21] Plaintiff once overheard Ms. Stitch ask Ms. Eberle if she would have enough energy to work out after work, and Ms. Eberle responded, "What do you think, I'm not 60 years old?" [*Id.* at 20] Plaintiff was 60 years old at the time. [*Id.*]

Once Ms. Stitch's training at Denver West was complete, she was transferred to a different CHER location. [*Id.* at ¶ 18] According to the Complaint, Ms. Eberle and Ms. Stitch "agreed that they would like to work together" at Denver West. [*Id.* at ¶ 37] Ms. Eberle and Ms. Stitch thus "agreed by words and conduct that [Ms.] Eberle would terminate [Plaintiff] and bring [Ms.] Stitch back to the Denver West location so they could work together." [*Id.* at ¶ 38]

Throughout her 14-year tenure working at the Denver West Facility, Plaintiff received excellent performance reviews and had never received even a mild reprimand, much less a written job action. [*Id.* at ¶¶ 17, 22] This changed on October 2, 2017, when Plaintiff received a "pretextual verbal reprimand" from Ms. Eberle for a purported violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), which prohibits unauthorized disclosures or misuse of protected health information.[3] [*Id.* at ¶ 22] Ms. Eberle, however, did not indicate that Plaintiff's job was in jeopardy when she delivered the verbal reprimand. [*Id.*] According to Plaintiff, Ms. Eberle did not "write up" a younger employee for a serious HIPAA violation. [*Id.* at ¶ 23] The Complaint further alleges that Ms. Eberle raised pretextual allegations that Plaintiff was performing poorly and gave Plaintiff a poor performance review on October 2, 2017. [*Id.* at ¶ 39]

---

[3] The Complaint subsequently alleges that Ms. Eberle "wrote [Plaintiff] up on the pretext that [Plaintiff] violated HIPPA." [*Id.* at ¶ 39]

On November 27, 2017, Ms. Eberle, acting on behalf of CHER, terminated Plaintiff's employment. [*Id.* at ¶ 24]  At the time of her termination, Plaintiff held the title of Patient Services Representative Lead and, at 60 years old, was the oldest employee at Denver West. [*Id.* at ¶¶ 1, 13]  After Plaintiff's termination, Ms. Stitch was brought back to Denver West to replace Plaintiff as Patient Services Representative Lead. [*Id.* at ¶ 27]  According to the Complaint, "CHER did not follow its progressive discipline policy [with respect to Plaintiff's termination] because it reasonably relied on [Ms.] Eberle's judgement as its Center Manager." [*Id.* at ¶ 25]  Plaintiff contends that Ms. Eberle and Ms. Stitch "recklessly caused CHER to violate its progressive disciplinary policy" by conspiring to terminate Plaintiff and misrepresenting her level of competence, dedication, and performance. [*Id.* at ¶ 28]

On April 28, 2018, Plaintiff filed this lawsuit against CHER, Ms. Eberle, and Ms. Stitch. [#1]  Plaintiff's Complaint asserts two claims for relief: (1) age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") against CHER, and (2) a state law civil conspiracy claim against Ms. Eberle and Ms. Stitch. [*Id.* at ¶¶ 29-42]  On July 2, 2018, Defendants filed the instant Motion seeking to dismiss the civil conspiracy claim. [#11]  Plaintiff has responded to the Motion (the "Response") [#18], and Defendants have replied (the "Reply") [#19].

II.     **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*,

595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."  *Id.* (quoting *Twombly,* 550 U.S. at 556).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## III.     ANALYSIS

Plaintiff alleges that Ms. Eberle and Ms. Stitch conspired to terminate Plaintiff so that they could work together.  [#1 at ¶¶ 34-42]  Defendants raise two arguments in support of their motion to dismiss Plaintiff's civil conspiracy claim.  First, Defendants argue that Plaintiff's civil conspiracy claim is preempted by the ADEA.  [#11 at 3-4]  Second, Defendants contend that, even if Plaintiff's civil conspiracy claim was not preempted,

Plaintiff has failed to allege sufficient factual support to state a claim for civil conspiracy. [*Id.* at 4-5] The Court addresses each of these arguments in turn.

### A. Preemption

Pursuant to the Supremacy Clause in Article VI of the United States Constitution, "[f]ederal law preempts state law in three circumstances: (1) where a statute has an express preemption provision, (2) where Congress intends federal law to 'occupy the field,' and (3) 'to the extent of any [state-law] conflict with a federal statute.'" *In re Universal Serv. Fund Tel. Billing Practice Litig.*, 619 F.3d 1188, 1195–96 (10th Cir. 2010) (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000)). "The ultimate touchstone of the preemption analysis is congressional intent." *Id.* (citing *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992)).

Defendants' federal preemption argument thus necessarily "require[s] an examination of whether Congress, in enacting the ADEA, intended to exercise its powers under the Supremacy Clause to abrogate rights or duties that the state law would otherwise recognize." *Conyers v. Safelite Glass Corp.*, 825 F.Supp. 974, 975 n.1 (D. Kan. 1993). Defendants fail to address any of the three circumstances in which federal preemption apply. Indeed, Defendants make no attempt to establish a congressional intent for the ADEA to preempt state law.[4]

---

[4] Defendants bear the burden of establishing federal preemption. *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1143 (10th Cir. 2010). Defendants' failure to address the "ultimate touchstone of the preemption analysis" alone thus justifies denying their preemption argument. *See Conyers*, 825 F. Supp. at 975 n.1 ("Defendant has provided the court with no argument as to a congressional intent to preempt state law, and thus, defendant has failed to sustain its burden as to any such argument"); *see also Bronson v. Swensen*, 500 F.3d 1099, 1105 (10th Cir. 2007) *(*"[C]ursory statements, without supporting analysis and case law, fail to constitute the kind of briefing that is necessary to avoid application of the forfeiture doctrine").

Instead of conducting this analysis, Defendants cite to two prior decisions from the District of Colorado that they contend establish that "the ADEA is the sole remedy for person[s] who have been discriminated against based on their age" and thus that the ADEA preempts state law claims premised upon age discrimination. [#11 at 3 (quoting *Cisneros v. Colorado*, No. 03-cv-02122-WDM-CBS, 2005 WL 1719755, at *8 (D. Colo. July 22, 2005) and citing *Caspar v. Lucent Techs., Inc.*, 280 F. Supp. 2d 1246 (D. Colo. 2003)).[5] Neither of the cases relied upon by Defendants, however, holds that the ADEA preempts state law claims.

In *Cisneros*, in addition to asserting a claim under the ADEA against the Colorado Department of Labor and Employment, the plaintiff also asserted claims against the individual defendants pursuant to 42 U.S.C. § 1983 for discriminating against him on the basis of his age in violation of federal law—*i.e.*, the ADEA. *Cisneros*, 2005 WL 1719755, at *8. The court dismissed the Section 1983 claims premised upon age discrimination, because "[t]he Tenth Circuit has explicitly held that 'age discrimination claims brought under § 1983 are preempted by the ADEA.'" *Id.* (quoting *Migneault v. Peck*, 158 F.3d

---

[5] Defendants also cite *White v. Lincoln Plating Co.* for the proposition that "[t]he ADEA contains no provisions concerning conspiracies." [#11 at 3 (quoting 955 F. Supp. 98, 101 (D. Colo. 1997))] Plaintiff, however, does not purport to bring her conspiracy claim pursuant to the ADEA but rather asserts the claim pursuant to Colorado state law. [*See, e.g.*, #1 at ¶¶ 34-42 (asserting claim for "civil conspiracy"); #18 at 3-4 (setting out the elements of civil conspiracy under Colorado law)] Notably, after finding that the ADEA did not provide a cause of action for conspiracy, the *White* court analyzed the plaintiff's conspiracy claim under Colorado law without considering whether any such state law claim was preempted by the ADEA. 955 F. Supp. at 101. Instead, the court in *White* dismissed the conspiracy claim because the plaintiff had failed to establish that the individual employee defendants accused of the conspiracy had acted in furtherance of their own advantage. *Id.* (finding that "a conspiracy cannot be shown where, as here, two employees of a corporation act on behalf of the corporation and not as individuals for their individual advantage" (internal quotation omitted)).

7

1131, 1140 (10th Cir. 1998), *vacated on other grounds*, *Bd. of Regents of Univ. of N.M. v. Migneault*, 528 U.S. 1110 (2000)).  The court further noted that "[t]he *Migneault* court adopted the holding and the reasoning of the Fifth Circuit in *LaFleur v. Tex. Dep't of Health*, 126 F.3d 758, 760 (5th Cir.1997), which held that 'the ADEA is the sole remedy for person[s] who have been discriminated against based on their age.'" *Cisneros*, 2005 WL 1719755, at *8.

*Cisneros, Migneault*, and *LaFleur*, however, only address whether the ADEA preempts Section 1983 claims; none of these cases addresses the preemption of state law claims.  This is an important distinction, because the test for whether Section 1983 claims are precluded by other federal statutes is distinct from the test set forth above for determining whether federal laws preempt state laws.  Section 1983 claims are preempted if the court determines that "Congress 'specifically foreclosed a remedy under § 1983 . . . by providing a comprehensive enforcement mechanism for protection of a federal right.'" *Cisneros*, 2005 WL 1719755, at *8 (quoting *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106 (1989)).  A federal statute that preempts Section 1983 claims thus does not necessarily also preempt state law claims.

The decision in *Caspar* also is inapposite.  In *Caspar*, the plaintiff asserted both (1) a claim for employment discrimination pursuant to Title VII, 42 U.S.C. § 2000e-1, *et seq.*, and (2) a state law claim for wrongful discharge in violation of public policy based upon allegations that she was terminated because of her sex and age.  *Caspar*, 280 F. Supp. 2d at 1248.  The court dismissed the plaintiff's state law wrongful discharge claim, because Colorado courts "have expressly disallowed its application where a statute provides a wrongful discharge remedy."  *Id.* at 1249 (citing *Martin Marietta Corp. v.*

*Lorenz*, 823 P.2d 100, 107 n.5 (Colo. 1992).  That rationale has no application to a claim for civil conspiracy, however, "[b]ecause the elements [of] a civil conspiracy claim *require* that the underlying acts be unlawful and create an *independent* cause of action." *Sterenbuch v. Goss*, 266 P.3d 428, 436 (Colo. App. 2011) (emphasis added; internal quotation omitted).

Defendants thus have provided the Court with no authority holding that the ADEA preempts state law claims premised upon age discrimination; nor is the Court aware of any.  To the contrary, the Tenth Circuit has indicated that state law claims are not preempted by the ADEA.  *See Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1238-39 (10th Cir. 1999) (noting that "pendent jurisdiction over state law claims in a federal ADEA action does not generally preempt state law remedies"), *citing with approval Moody v. Pepsi–Cola Metro. Bottling Co., Inc.*, 915 F.2d 201, 210 (6th Cir. 1990) ("[I]t is our best judgment that because there is no clear statement of Congressional intent to preempt, no requirement on any party to act in accordance with state law at the risk of violating federal law, and nothing inherent in the nature of age discrimination which requires federal preeminence, this [emotional damages pendent state law claim] is not an appropriate case for preemption.").

Accordingly, Defendants have not met their burden of showing that Plaintiff's state law civil conspiracy claim is preempted by the ADEA.[6]

---

[6] In their Reply, Defendants argue that Plaintiff's failure to respond to the preemption argument raised in the Motion should be interpreted as a concession to that argument, and "[f]or this reason alone," the civil conspiracy claim "must be dismissed." [#19 at 2] The Court agrees that the Court is not obligated to "make a party's case for it," *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998), and that a plaintiff—particularly one represented by counsel—should respond to all arguments made in a motion to dismiss to ensure that the plaintiff's arguments are advocated and not waived, *see Cole*

9

## B. Failure to Allege Sufficient Factual Support

Defendants next argue that Plaintiff's civil conspiracy claim should be dismissed, because Plaintiff failed to allege sufficient factual support to state a claim. [#11 at 4-5] To state a claim for civil conspiracy under Colorado law, a plaintiff must allege: "(1) two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 387 F. Supp. 2d 1130, 1153 (D. Colo. 2005) (citing *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989)). Conclusory allegations merely reciting the elements of the claim, however, are insufficient. *See, e.g.*, *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) ("Conclusory allegations of conspiracy are insufficient . . ."); *Sieverding v. Colo. Bar Ass'n,* No. Civ. A.02–M–1950 (OES), 2003 WL 22400218, at *18 (D. Colo. Oct. 14, 2003) (holding that "conclusory statements with regard to the existence of conspiracies surrounding every event that they allege is insufficient to state a claim"). Rather, Plaintiff "must allege *specific facts* showing agreement and concerted action among the defendants." *McDaniel v. Denver Lending Grp., Inc.*, No. 08-cv-02617-PAB-KLM, 2009 WL 1873581, at *12 (D. Colo. June 30, 2009) (emphasis in original; quotation omitted).

---

*v. New Mexico*, 58 Fed. App'x 825, 829 (10th Cir.2003) (holding that, "by failing to raise the issue in his initial response to the [ ] motion to dismiss, [the plaintiff] has waived the argument"). The Court disagrees, however, that a plaintiff's failure to respond to an argument in a motion to dismiss necessarily requires the Court to interpret that failure as a concession and grant the motion. To the contrary, the Tenth Circuit has instructed that "even if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted." *Issa v. Comp USA*, 354 F.3d 1174, 1178 (10th Cir. 2003).

Here, Plaintiff fails to allege specific facts to support at least two of the elements of a civil conspiracy claim.  In support of the civil conspiracy claim, the Complaint alleges that Ms. Eberle and Ms. Stitch "agreed by words and conduct that [Ms.] Eberle would terminate [Plaintiff] and bring [Ms.] Stitch back to the Denver West location so they could work together."  [#1 at ¶ 38]  To accomplish this, Ms. Eberle allegedly raised pretextual allegations regarding Plaintiff's performance to create a pretextual reason to fire Plaintiff.  [*Id.* at ¶¶ 28, 38]  First, these allegations are insufficient to establish the requisite "meeting of the minds" of an agreement.  Plaintiff's bare allegation that Ms. Eberle and Ms. Stitch "agreed by words and conduct" to terminate Plaintiff without any specific factual allegations regarding the agreement or the alleged agreed upon conduct is insufficient to state a claim.  As the Supreme Court explained in *Twombly*, "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice.  Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."  550 U.S. at 556-57.  Courts in this district have found similar conclusory allegations that defendants "agreed by words or conduct" to illegal activity insufficient to state a civil conspiracy claim.  *See, e.g.*, *Harris v. Commerce City*, No. 09-cv-01728-MSK-KMT, 2010 WL 3307465, at *5 (D. Colo. Aug. 18, 2010) (finding allegations that "defendants agreed by words or conduct to accomplish unlawful goals" and that "defendants schemed and acted in concert to apply undue pressure and threats of a[n] arrest" insufficient to state a claim); *Brooks v. Denver Pub. Sch.*, No. 17-cv-01968-REB-MEH, 2017 WL 5495793, at *11 (D. Colo. Nov. 16, 2017) (finding allegation that "these Defendants agreed by words or conduct to

11

accomplish the illegal and discriminatory goal of maliciously, willfully, and intentionally causing Plaintiff's discriminatory termination . . . " insufficient to state a claim).

Second, Plaintiff fails sufficiently to allege one or more unlawful overt acts undertaken as part of the conspiracy. The only illegal act alleged in the complaint is CHER's alleged firing of Plaintiff in violation of the ADEA. The allegations in the complaint regarding Plaintiff's conspiracy claim, however, do not allege that Ms. Stitch was aware of—or participated in—Plaintiff's firing in violation of the ADEA. Instead, Plaintiff argues that Ms. Eberle and Ms. Stitch "agreed that [Ms.] Eberle would take actions to accomplish their goal of working together again." [#18 at 4] Specifically, Plaintiff contends that Ms. Eberle "acted wrongfully by terminating [Plaintiff] on the pretext of poor performance and violation of HIPPA" for the purpose of allowing the friends to work together again. [*Id.*] To the extent the purpose of creating the pretextual reasons for firing Plaintiff was to allow Ms. Eberle and Ms. Stitch to work together again, as alleged in the Complaint and argued in the Response, Ms. Eberle's actions—and the goal of the conspiracy—may have been wrong from an ethical standpoint but they did not violate the ADEA. To be a violation of the ADEA, Plaintiff's age must have been the "but for" cause of the decision by CHER (acting through Ms. Eberle) to terminate Plaintiff. *See Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1277 (10th Cir. 2010). As a result, to state a claim for conspiracy, Plaintiff must allege that Ms. Eberle and Ms. Stitch either (1) both were aware that the purpose of the conspiracy was to fire Plaintiff because of her age; or (2) both were aware that Plaintiff would be fired because of her age in furtherance of the goal of the conspiracy. *See Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469, 1480 (D. Colo. 1996) ("The purpose of the conspiracy must either be unlawful or lawful and accomplished by unlawful means."); *see*

*also Sieverding*, 2003 WL 22400218, at *18 ("In order to successfully plead a civil conspiracy, plaintiff must allege facts that show that each defendant agreed to do something in furtherance of the conspiracy, knowing of its improper purpose."). The Complaint does not plausibly do so.

Accordingly, the Court finds that Plaintiff has failed to state a claim for civil conspiracy against Defendants Elizabeth Eberle and Ashley Stitch.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion [#11] and Plaintiff's civil conspiracy claim is **DISMISSED WITHOUT PREJUDICE**. The Plaintiff is **GRANTED LEAVE** to file an amended complaint addressing the deficiencies identified in this Order on or before **December 3, 2018**. If Plaintiff chooses not to file an amended complaint within that time, Defendants Elizabeth Eberle and Ashley Stitch will be dismissed from this action.

DATED: November 19, 2018

BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge

13